Curia, per

Richardson, J.
This case is, in itself, of little moment, and the question made turns upon a well known principle of law. But, as it is the first of a class of exceptions, that may possibly arise out of the late bankrupt Act, or the proceedings in bankruptcies, in which much may be yet investigated, such a case may have consequences.
We can scarcely hope that a bankrupt Act, permitting to debtors themselves, to claim of right the benefit of its provisions, choosing their own time, and in any State, would have failed to cover many frauds. Such a consequence and the proper construction of the wholesome salvo, for trust estates, made by the Act, must give rise to analogous questions, and many difficulties beyond former Bankrupt laws.
It is true that Bankrupt laws were wisely suggested for the purpose of commercial men, who are understood to borrow money, and to procure credit for the purchase of things, not for their own personal use, but for sale ; not for an estate, but for further speculations and more credit.
To lend a professional trader, your money or credit, is not for the purpose of securing his estate, or your own returns, but to afford scope for his peculiar speculative enterprizes. The promotion of such objects, forms the proper and only justification of Bankrupt laws.
*82 It has been said that, in New York, ninety-seven traders utterly fail, to three who realize permanent estates; if so, then, ninety-seven in the hundred are as bankrupts in that emporium.
This seems extravagant; but it does indicate, for what class of men, commercial nations are under the necessity of paying the tax of a Bankrupt law and why its operation should be confined to those alone, who come within the policy and understanding of such laws, so made, and wisely made, for the exigencies of an enterprizing commerce. But while the late Bankrupt Act remained of force, not only mechanics were classed with merchants, but lawyers and doctors, planters and overseers, scholars and schoolmasters, all had equal claim with the unfortunate trader.
As laws indicate, or form the opinons of the day, and opinions form its morals and conduct, so laws may sow a vice in society, and thus invite its natural reproduction of increased crimes.
May we not, then, anticipate that such seed being so carefully cast, on every hand, may not only here and there produce the very worst specimens, but at last grow up, even to some instances of alarming repudiation of debts.
The little case before me, scarcely seems to admit of such grave strictures. But it is the first of the kind under the late Act, and every incipient decision may lay a foundation for more than its own merits, and in cases not to be foreseen.
The strict question of the case is, does the certificate of the bankruptcy ofWm. Goss, presuppose the legal notice required by the Act, to be given to bis creditors. Such notice, was indispensable before the final adjudication, that he was a bankrupt; but by the practice of courts, we are to suppose, or at least assume, that the court adjudging such bankruptcy did decide, not only in good faith, but with all the facts necessary or required by the Act of Congress; and as notice to creditors was of the very essence of a bankrupt’s exemption, we cannot avoid the presumption of such notice ; and as nothing to the contrary appears, the presumption stands firm.
Great inconvenience, if not frequent impossibilities to *83 unfortunate, but honest bankrupts, would follow any other rule.
In thus deciding, from a general respect for the law itself, and all adjudications, we are greatly aided by a similar decision, made by our own court in 1804, under the Bankrupt law of 1800. In the case of Sinclair and Smythe, 1 Brev. 402, in which precisely the same question arose. We follow that decision, without extending it further, except to apply it to the late Bankrupt Act.
The circuit decision is, therefore, affirmed, and the motion dismissed.
O’Neall, Butler and Wardlaw, JJ. concurred.